JUDGE PETERS
delivered the opinion oe the court.
As early as 1822 Andrew Mershon, a citizen of Garrard County, died intestate, the owner of a tract of land containing about two hundred and sixty-eight acres, which descended to his children, of whom there were ten.
This suit was brought in July, 1869, by the children and heirs of Wm. Mershon, deceased, who was a son of the intestate, Andrew Mershon, against Furnace Mershon, another son of said intestate, to recover the one seventh of one third of said tract of land which they claim by descent from their father, to whom they allege said interest descended upon the death of his brother, Robert Mershon, who died, some years before their father, intestate and childless, and was at his death the owner of the one undivided third of said two hundred and sixty-eight acres of land.
*635 Their petition was dismissed by the court below, and they have appealed to this court.
The theory of appellants is that Robert Mershon, Burkett Mershon, and appellee, Furnace Mershon, soon after the death of their father, formed a partnership to deal in stock and to purchase land; that they were equal partners, and as such purchased the shares of their brothers and sister in said tract of land descended to them from their father; that Furnace Mershon took the titles such as were made by the vendors to himself, but held the same in trust for the benefit of all the partners. The allegations of the petition are controverted by the answer of Furnace Mershon, and he claims to have been the absolute owner of the whole tract till 1866, when he sold and conveyed it to John Mershon.
After the death of their father, Furnace, Robert, and Burkett Mershon remained on the old homestead, and continued to live together for some time, and Furnace and Burkett cultivated the farm for a number of years; but from the transcript of the record of a suit in the Garrard Circuit Court, read as evidence in this case, in which Burkett and Furnace Mershon were plaintiffs, and James Mershon, administrator of Andrew Mershon, deceased, was defendant, it appears that Burkett and Furnace rented the land from James, the administrator, and entered as tenants at an annual rent of two hundred dollars.
In the transcript referred to there is a writing executed by William Mershon, the father of appellants, dated the 15th of April, 1828, purporting to convey all his interest in said land to Furnace and Burkett Mershon for the consideration of three hundred and eight dollars.
By a writing dated the 4th of May, 1825, Granville N. Love and Clementina, his wife, the only daughter of the intestate, Andrew Mershon, in consideration of three hundred and fifty-two dollars in hand paid, conveyed to Furnace *636 Mershon the interest of Mrs. Love, being the one tenth in said land.
On the 15th of June, 1829, Benjamin Mershon, another one of the children and heirs of Andrew Mershon, deceased, in consideration of two hundred and fifty dollars, conveyed his interest in said land to Furnace Mershon.
On the 21st of August, 1830, Jesse Yantis, sheriff of Garrard County, conveyed the interests of James and Andrew Mershon, jr., in said tract of land to Furnace Mershon, he having as sheriff aforesaid sold said interests under an execution in his hands, in favor of James Pope against said James, he then being the owner of Andrew’s interest or share in the land, at which sale said Furnace became the purchaser.
On the 3d of March, 1827, Robert Mershon, in consideration that Furnace Mershon had paid to a creditor of said Robert and others the sum of eight hundred and seventy-one dollars, for the one third of which the said Robert was bound, conveyed all his interest in said tract of two hundred and sixty-eight acres, and all his interest in twenty-two and one third acres, called the mill-tract, to said Furnace Mershon. That deed, it seems, never was recorded; but the names of S. H. Anderson and William Gill are subscribed thereto as witnesses, and their signatures are fully proved. This was several years after the appellants allege the partnership was formed.
It thus appears that appellee, Furnace Mershon, held.the deeds of Mrs. Love and of Benjamin and Robert for their respective shares; the sheriff’s deed for the shares of James and Andrew; and by the title-bond of William to himself and Burkett for a conveyance of his interest, executed more than forty years before the institution of this suit, including his own share descended to him, he then held the legal title to six tenths of the whole tract. It is true that there is no evidence that the deeds from Mrs. Love and Robert' Mershon *637 were ever recorded; but as to Robert, the mere failure to record the deed, neither he nor volunteers under him could profit thereby; and as to Mrs. Love, no one controverts the title derived through her.
As to a partnership between Robert, Burkett, and Furnace Mershon, there is no evidence of an express agreement, either written or unwritten, between them to form any, and the only evidence that any such relation existed consists in the recollection of statements made by the parties to or in the presence of the various witnesses who have testified in the case; of proof of the fact that Burkett and Furnace lived in the mansion house together for a number of years, a part of the time they cultivated the farm together, afterward each one cultivated separate parcels; and that Robert, when he was not working out at his trade of blacksmith, being a bachelor, would return to the old homestead, and while there, for several and it may be many winters, acted as the principal in distilling whisky, which was manufactured on the place; and of the further fact that appellee compromised a suit brought against him by the children of Burkett Mershon, and paid them for one third of said tract of land after the death of their father, and took their conveyance for the same, and on the 11th of February, 1843, he executed to Robert Mershon, M. Pendleton, and J. "W. Pullins a mortgage on the land, to secure the payment of a debt which he therein acknowledged he owed to Robert Mershon, and to secure the other mortgagees against certain liabilities which they, as his sureties, had incurred for him, in which he uses this language: “ The said party of the first part, in consideration of the premises, doth hereby bargain, sell, convey, and confirm unto the said Robert Mershon, Micajah Pendleton, and James W. Pullins, in trust and mortgage, all my right, title, interest, and claim in and to the tract of land on which I live, lying and being in Garrard County, on the road from Stanford to Lancaster, containing about three *638 hundred and fifty-six acres, more or less, my interest and claim being about one third, the tract of land being the same that descended to me and my heirs from my father, Andrew Mershon.”
And in the deed made by the children of Burkett Mershon to appellee, Furnace Mershon, upon the compromise of the suit brought by them against him for the one third of said tract, they recite that the “ land descended to the heirs of said Andrew, deceased, and was purchased from them by said Furnace, Burkett, and Robert.”
These recitals, it is insisted by the counsel for appellants, operate as estoppels, and preclude appellee from denying their force and effect by any evidence of inferior solemnity to a deed. As to estoppels by deed, the general rule is that only the parties to it and those in privity with them can be bound by or take advantage of the estoppel created by the instrument. (Bigelow on Estoppels, 269.)
Robert Mershon was no party to the deed made by the children and heirs of Burkett .Mershon to Furnace Mershon. It was altogether res inter alios aeta. If appellant had been induced to purchase one third of the estate by seeing these recitals, the appellee might have been precluded from asserting a claim against them and to their prejudice. But while he by the recitals merely admits that he was the owner of only one third of the estate, he neither affirms nor admits that the title to any part of the residue was in Robert Mershon; and it would be an unprecedented extension of the doctrine of equitable estoppel to hold that a man is bound to the world to make good what he has said to one, if others choose to rely upon it. (Osgood v. Abbott, 58 Maine, 73.)
It does not seem consistent with the principles of law or reason that a man can be held liable not only to parties, and privies to his deed, but to all mankind, to make good every introductory recital which his deed may contain.
*639 If Robert Mershon were living and were to sue for this land, he certainly could not recover it on the mere recitals in those deeds. They do contain admissions that Furnace Mershon was not the owner of the whole of the land described, but they contain no recognition whatever of any right in Robert Mershon to any part thereof; and to show title in him facts wholly extrinsic from the deeds must be resorted to, and those relied upon in this case we regard as insufficient to authorize a recovery.
The continued and uninterrupted possession of Furnace Mershon with a claim of right for so great a length of time before and after the death of his brother Robert, and the repeated admissions of Robert that the land was his brother’s, and the evidence of his (Robert’s) continued insolvency from 1826, when he was involved in litigation disastrous to him, as the record shows,all conduce irresistibly to the conclusion that he in fact had no right to any of the land. And another fact may be referred to as fortifying that conclusion: although the father of appellants survived Robert several years, he never asserted any claim to the land derived through Robert, or in any other way.
Appellants failed to manifest title in themselves to any part of said land, and the judgment must therefore be affirmed.